1  G. MARK ALBRIGHT, ESQ.,, NBN 001394
   JORGE L. ALVAREZ, ESQ.. NBN 014466
2  **ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
3  801 South Rancho Drive, Suite D-4
   Las Vegas, Nevada  89106
4  Tel:  702.384.7111/ Fax:  702.384.0605
   gma@albrightstoddard.com
5  jalvarez@albrightstoddard.com

6  Christopher J. Keller
7  Eric J. Belfi
   Francis P. McConville
8  **LABATON SUCHAROW LLP**
9  140 Broadway
   New York, New York  10005
10 Telephone: (212) 907-0700
   Facsimile: (212) 818-0477
11 Emails:     ckeller@labaton.com
12             ebelfi@labaton.com
               fmcconville@labaton.com
13
14 *Counsel for Plaintiff Local 705 International Brotherhood*
   *of Teamsters Pension Fund*
15 *Attorneys for Plaintiffs*

16              **UNITED STATES DISTRICT COURT**
17                    **DISTRICT OF NEVADA**

18
19 LOCAL 705 INTERNATIONAL              CASE NO.:
   BROTHERHOOD OF TEAMSTERS PENSION
20 FUND, on Behalf of Itself and All Others
   Similarly Situated,
21
                      Plaintiffs,              **CLASS ACTION COMPLAINT**
22 v.                                          **FOR VIOLATIONS OF**
                                               **SECTIONS 14 (e) AND 20(a) OF**
23 DIAMOND RESORTS INTERNATIONAL,              **THE SECURITIES AND**
24 INC.; DAVID BERKMAN, STEPHEN J.             **EXCHANGE ACT OF 1934**
   CLOOBECK; RICHARD M. DALEY; FRANKIE
25 SUE DEL PAPA; JEFFREY W. JONES, DAVID       **Jury Trial Demanded**
   PALMER, HOPE S. TAITZ; ZACHARY D.
26 WARREN; and ROBERT WOLF,
27
                      Defendants.
28

Law Offices
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

Plaintiff Local 705 International Brotherhood of Teamsters Pension Fund ("Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations specifically pertaining to Plaintiff and his counsel, which are made on personal knowledge, based on the investigation conducted by Plaintiff's counsel. That investigation included reviewing and analyzing information concerning the July 14, 2016 cash tender offer ("Tender Offer") commenced by Dakota Merger Sub, Inc., a wholly-owned subsidiary of private equity firm Apollo Global Management LLC (collectively, "Apollo"), to acquire the outstanding shares of Diamond Resorts International, Inc. ("Diamond" or the "Company"), which Plaintiff (through his counsel) obtained from, among other sources: (i) publicly available press releases, news articles, and other media reports; (ii) publicly available financial information concerning Diamond; (iii) filings with the U.S. Securities and Exchange Commission ("SEC") made in connection with the Tender Offer; (iv) publicly available court filings in the appraisal action proceeding in the Court of Chancery of the State of Delaware captioned *In re Appraisal of Diamond Resorts International, Inc.*, Case No. 12759-VCMR (Del. Ch. Sept. 20, 2016); and (v) publicly available court filings in the class action proceeding in the Court of Chancery of the State of Delaware captioned *Appel, et al. v. Berkman, et al.*, Case No. 12844-VCMR (Del. Ch. Oct. 21, 2016).

## NATURE OF THE CASE

1.      This is a securities class action on behalf of shareholders who held, sold or tendered Diamond common stock, or derivative securities convertible into, exercisable for, or exchangeable against Diamond common stock, from the period beginning on July 14, 2016, through September 1, 2016, against Diamond and certain officers and directors of Diamond (the "Individual Defendants" or "Board" and collectively with Diamond, the "Defendants"), for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 78n(e), 78t(a).

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement to be filed with the SEC on July 14, 2016 (the "Recommendation Statement"). The Recommendation Statement provided Diamond's recommendation that shareholders accept the cash tender offer by Apollo affiliates Dakota Merger Sub, Inc. and Dakota Parent, Inc. to purchase all of the Diamond outstanding common stock shares at a purchase price of $30.25 per share ("Tender Offer").

3.      Over the course of 2015, as Diamond had grown concerned that the value of the Company was not truly reflected in the price of its common stock, Diamond began to explore avenues to maximize the price, including potential transformational acquisitions or a potential sale of the Company. By February of 2016, Diamond's Board had formed a committee charged with exploring a potential sale of the Company, which in turn hired Centerview as its financial advisor. On June 23, 2016, Apollo submitted a bid to purchase Apollo for $30.25 per share.

4.      The Board voted in favor of the sale of Diamond to Apollo on June 26, 2016. But Stephen J. Cloobeck ("Cloobeck"), Diamond's founder, Chairman, and largest stockholder, abstained from that vote. As recorded in the minutes of two separate Board meetings held on both June 25 and 26, 2016, Cloobeck expressly stated to the Board the reason he was abstaining from the vote.  He said he was disappointed with the Company's management for not having run the business he had founded and led in a manner that would command both a higher market and deal price for shares of its common stock.  Accordingly, it was his view that it was not the right time to sell the Company.

5.      Notwithstanding the concerns of the Board's Chairman, the Board approved the Agreement and Plan of Merger (the "Merger Agreement") with Apollo. On June 29, 2016, Diamond announced that the Company had entered into the Merger Agreement with Apollo. At

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

no time subsequent to the Board's approval vote did Defendants ever disclose that Cloobeck had abstained from the vote because mismanagement of Diamond Resorts had negatively affected the sale price, and, as a result, he was of the view that it was not the right time to sell the Company.

6.      On July 14, 2016, Defendants caused a materially incomplete and misleading Recommendation Statement to be filed with the SEC. Defendants recommended that shareholders tender their shares pursuant to the Tender Offer, stating that the $30.25 offer price was fair and advisable. But Defendants omitted the critical fact that the Board's Chairman had abstained from voting on the sale of Diamond for reasons that directly contradicted the Board's recommendation to the stockholder.

7.      In addition, during the pendency of the Tender Offer, Apollo offered consulting agreements or co-investment opportunities to Cloobeck, Diamond's Vice Chairman Lowell Kraff ("Kraff"), and CEO David Palmer ("Palmer"), which a reasonable investor would have concluded were financial incentives to support the sale of Diamond to Apollo, in addition to the consideration offered to all other Diamond public stockholders. These incentives were not offered or disclosed to Diamond's public stockholders who were solicited to tender their shares into the deal.

8.      Pursuant to the Merger Agreement, the consummation of the Tender Offer was subject to the condition that, as of the expiration of the Tender Offer, more than 50% of the then-outstanding shares were validly tendered and not properly withdrawn. Because Diamond shareholders who validly tendered pursuant to the Tender Offer were permitted during the pendency of the Tender Offer to withdraw their individual tender offers, the omission of the subsequent financial incentives to insiders caused all tendering class members, regardless of when they tendered, to be harmed by the material omissions.

9.      Particularly in light of the legitimate concerns initially expressed by Cloobeck, the $30.25 per-share consideration Diamond stockholders received in connection with the Tender

Offer was fundamentally unfair to Plaintiff and the other non-Defendant common stockholders of the Company. Defendants asked Diamond stockholders to tender their shares for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Recommendation Statement, in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the Recommendation Statement contained materially incomplete and misleading information concerning the reasons for the Chairman's abstention and the financial incentives in the form of consulting agreements or co-investment opportunities offered to Cloobeck, Diamond's Vice Chairman Kraff, and Diamond's President and CEO Palmer to support the sale of Diamond to Apollo, additional consideration not provided to any other stockholder in the Company.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under Sections 14(e) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(e) and 78t(a). The Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. §1331.

11. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in the District of Nevada under Section 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. §1391 because Diamond maintains its world headquarters in this District, each Defendant transacted business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**PARTIES**

13.    Plaintiff held Diamond common stock on July 14, 2016 and through September 1, 2016.

14.    Defendant Diamond is a global leader in the hospitality and vacation ownership industry, with a worldwide resort network of 420 vacation destinations located in 35 countries throughout the world. Diamond common stock was listed on the New York Stock Exchange under the symbol "DRII." The Company is a Delaware Corporation and has its principal headquarters at 10600 West Charleston Boulevard, Las Vegas, Nevada 89135. Prior to September 2, 2016, Diamond was a publicly-held company. On September 2, 2016, Diamond was merged into, and therefore acquired by, funds affiliated with Apollo. Since September 2, 2016, Diamond and all of its various affiliates and subsidiaries have been owned and controlled by Apollo.

15.    Defendant David J. Berkman ("Berkman") served as a Diamond director from 2013 until September 2, 2016, on which date the Merger was consummated.

16.    Defendant Cloobeck ("Cloobeck") is Diamond's founder and served as Chairman of the Board from the Company's inception until the September 2, 2016 consummation of the Merger. As of March 31, 2016, Cloobeck was the Company's largest stockholder, beneficially owning 15.1% of the Company's outstanding common stock. As detailed further herein, Defendant Cloobeck abstained from the Board vote on whether to recommend that Diamond stockholders tender their shares into the Tender Offer because he was disappointed with the price and the Company's management for not having run the business in a manner that would command a higher price, and that in his view, it was not the right time to sell the Company.

17.    Defendant Richard M. Daley ("Daley") served as a Diamond director from the Company's initial public offering ("IPO") in July 2013 until September 2, 2016.

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

18.     Defendant Frankie Sue Del Papa ("Del Papa") served as a Diamond director from May 2016 until September 2, 2016.

19.     Defendant Jeffrey W. Jones ("Jones") served as a Diamond director from 2015 until September 2, 2016.

20.     Defendant David Palmer ("Palmer") has served as the Company's President and Chief Executive Officer ("CEO"), and as a member of the Diamond Board, since the Company's inception in January 2013. Following consummation of the Merger, Palmer continues to serve as the Company's President and CEO and as a member of the Board.

21.     Defendant Hope S. Taitz ("Taitz") served as a Diamond director from August 2013 until September 2, 2016. According to Diamond's definitive proxy statement filed on April 15, 2016 in connection with the Company's 2016 annual meeting of stockholders (the "2016 Annual Proxy"), Taitz serves as a director at MidCap FinCo Holdings Limited, MidCap FinCo Limited, MidCap Funding I (Ireland) Limited, MidCap FinCo Intermediate Holdings Ltd, Apollo Residential Mortgage, Inc., Athene USA Corporation, Athene Annuity and Life Company, Athene Life Insurance Company of New York, Athene Annuity and Life Assurance Company of New York, Athene Annuity & Life Assurance Company, Athene Life Re Ltd. and Athene Holding Ltd., all of which are affiliates of Apollo.

22.     Defendant Zachary D. Warren ("Warren") served as a Diamond director from the Company's inception in January 2013 until September 2, 2016.

23.     Defendant Robert Wolf ("Wolf") served as a Diamond director from the Company's IPO in July 2013 until September 2, 2016.

24.     Defendants Berkman, Cloobeck, Daley, Del Papa, Jones, Palmer, Taitz, Warren, and Wolf are collectively referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of the other shareholders who held, sold or tendered Diamond common stock, or derivative securities convertible into, exercisable for, or exchangeable against Diamond common stock, from the period beginning on July 14, 2016, through September 1, 2016 (the "Class"). The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

26.     This action is properly maintainable as a class action.

27.     The Class is so numerous that joinder of all members is impracticable. As of September 1, 2018, Diamond had in excess of 69 million shares of common stock outstanding. Members of the Class are dispersed throughout the United States and are so numerous that it is impracticable to bring them all before this Court.

28.     Questions of law and fact exist that are common to the Class, including, among others:

(a)     whether the Defendants have violated 14(e) and 20(a) of the Exchange Act in connection with the Tender Offer; and

(b)     whether Plaintiff and the other members of the Class were harmed.

29.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

30.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the

Class, which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## SUBSTANTIVE ALLEGATIONS

### A. Background

31.     Defendant Cloobeck founded Diamond, a global vacation timeshare company based in Las Vegas, Nevada, in 2007. The Company owns a network of international vacation destinations and sells vacation ownership "points," which entitle the owner to reserve rooms in one of Diamond's resort or hotel properties. Cloobeck served as its Chairman and CEO from its founding through the end of 2012. After Diamond Resorts went public in 2013, Cloobeck continued to serve as its Chairman and Defendant Palmer became its President and CEO.

32.     Beginning in mid-2015, the Company's stock price began to decline relative to the broader market and other comparable public companies, even though Diamond was continuing to achieve consecutive quarters of increasing financial performance. In the spring of 2015, the Board formed a transaction committee to facilitate the review of various corporate development opportunities, including potential transformational acquisitions or a potential sale of the Company.

33.     In June of 2015, the transaction committee engaged Centerview to assist with its review of potential strategic transactions. Over the course of the next several months, the Company, with Centerview's assistance, entered into non-disclosure agreements and commenced preliminary discussions with certain acquisition targets and potential investors.

### B. The Take-Private Deal

34.     Following significant due diligence, the transaction committee was disbanded in September 2015. Although the Board had determined that potential transformational acquisitions

were economically unattractive, it continued to believe it was important for Diamond to actively review a potential sale of the Company, in light of the continued stock price underperformance, the performance of the hospitality and vacation ownership sector in general, and the perceived disconnect between the market value of the Company and the potential value of the underlying business, which had continued to meet its financial expectations.

35.     In January of 2016, private equity firm Apollo Global Management LLC approached Diamond to discuss a potential take-private transaction in which Diamond, then a publicly-traded company, would be converted into a private company.

36.     At a meeting held on February 22, 2016, the Board determined it would be advisable to review strategic alternatives, including a potential sale, and to form and publicly announce a committee comprised solely of independent directors to lead such review (the "Strategic Review Committee"). At this meeting, the Board formed the Strategic Review Committee and appointed Defendants Berkman, Jones, Taitz, and Wolf as members, with Defendants Taitz and Wolf appointed as co-chairs.

37.     On February 24, 2016, Diamond publicly announced that it had formed the Strategic Review Committee, comprised of purportedly independent directors, to "explore strategic alternatives to maximize shareholder value." In the announcement, Diamond President and CEO Palmer complained of the "significant dislocation" between Diamond's stock price and what management believed to be the true value of the Company.

38.     In the announcement, Palmer stated that Diamond had achieved ten straight quarters of "record financial performance," and had provided financial guidance pointing to "another record year in 2016." To address the disconnect between this performance and Diamond's stock price, the Committee was charged with evaluating a "wide range of strategic alternatives to unlock value for shareholders."

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

39.     The Company also announced in the February 24, 2016 press release that the Strategic Review Committee had retained Centerview as its financial advisor. Following the announcement, Centerview received written indications of interest to acquire Diamond from five parties.  The bids ranged from $23 per share to $33 per share, including Apollo's bid of $28-$30 per share.  The Strategic Review Committee set a deadline of June 23, 2016 for prospective buyers to submit formal bids.

40.     In anticipation of receipt of final bids, the Strategic Review Committee revisited the matter of the independence of the Board members who comprised the Strategic Review Committee.  In light of her position as a director on the boards of entities affiliated with Apollo, Defendant Taitz decided to recuse herself from any Strategic Review Committee meetings in which the Strategic Review Committee would deliberate on its recommendation to the Board.

41.     On June 23, 2016, the bid deadline, Apollo submitted a final bid of $30.25 per share. It also sent a letter to Diamond indicating it would be in a position to execute the merger agreement and to announce the transaction prior to the opening of the market on Monday, June 27, 2016.

42.     During a June 26, 2016 meeting of the Board, Centerview reviewed with the Board its financial analysis of Apollo's $30.25 per share offer, and the Board voted in favor of Diamond's sale to Apollo. Defendant Cloobeck abstained from voting.

**C.     The Recommendation Statement Filed on July 14, 2016 Provided Stockholders with Materially Incomplete and Misleading Information Concerning the Transaction**

43.     On July 14, 2016, Defendants caused the materially incomplete and misleading Recommendation Statement to be filed with the SEC. While the Recommendation Statement provided a detailed recitation of the process the Board undertook prior to voting to enter into the Merger Agreement with Apollo, it omitted certain pieces of critical and material information which render portions of the Recommendation Statement materially incomplete and misleading.

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

44.    The Recommendation Statement disclosed in full the three-page fairness opinion submitted by Centerview to the Board, and gave a step-by step accounting of the events leading to the Board vote. But notably absent from that recitation was the critical fact that the Company's founder, largest stockholder, and Chairman, Defendant Cloobeck, had abstained from supporting the continuing merger discussions, and ultimately from approving the deal, because he was disappointed with the mismanagement of Diamond, which he believed caused the Company's stock price to be undervalued and made it difficult to attract an adequate sales price, and therefore did not believe it was the appropriate time to sell the Company.

45.    These highly significant views, which would have been material to every member of the Class, were expressly stated to all other named Defendants. As revealed in the meeting minutes of two separate Board meetings on June 25 and 26, 2016, Cloobeck tied Diamond's low stock price directly to what he believed was mismanagement of the Company. He expressly stated to the Board that he was disappointed with the Company's management for not having run the business in a manner that would command a higher price.  For that reason, he stated that it was not the right time to sell the Company and that, therefore, he would abstain.

46.    In the Recommendation Statement, which recommended to shareholders that they tender their shares to Apollo, the Board did not disclose to stockholders the reasons for Cloobeck's abstention. Instead, the Recommendation Statement simply stated that "[a]ll of the directors voted in favor of [the transaction] with the exception of the Company's chairman, who abstained." As to Cloobeck's position on tendering his own shares, the Recommendation Statement stated that, "To the Company's knowledge, the chairman of the board of directors has not yet determined whether to tender…his Shares."

47.    In its most recent annual election proxy before the tender offer, the Board described Cloobeck the following way:

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

Mr. Cloobeck[] [has a] unique understanding of the opportunities and challenges that we face and…in-depth knowledge about our business, including our customers, operations, key business drivers and longterm growth strategies, derived from his 30 years of experience in the vacation ownership industry and his service as our founder and former Chief Executive Officer.

48.     Stockholders are entitled to the information necessary to make an informed decision concerning the adequacy of the consideration they are being offered via the Tender Offer, including the opinion of the Board's Chairman and largest shareholder that it was the wrong time to sell because Diamond was being mismanaged, and this mismanagement adversely affected the ability of the Company to attract an offer that reflected the fair value of Diamonds's shares.

49.     Defendants caused a materially incomplete and misleading Recommendation Statement to be filed with the SEC, omitting that the Board's Chairman had abstained from voting on the sale of Diamond—the business that he had founded and led—for reasons that directly contradicted the Board's recommendation to the stockholder. Diamond's representation to shareholders that they would receive a fair price in the merger was materially misleading without an additional simultaneous, tempering disclosure that Cloobeck believed it was a bad time to sell the Company and had expressed the reasons for that view and for his abstention to the Board. Specifically, Cloobeck believed that it was not the right time to sell Diamond because mismanagement had negatively affected the sales price.

**D.     Defendants Failed to Update the Recommendation Statement Filed on July 14, 2016 with Subsequent Material Facts Occurring During the Tender Offer, Rendering it Further Misleading**

50.     With the Tender Offer deadline looming and with an insufficient number of shares tendered, Apollo became concerned that the 50% threshold for the tender offer would not be reached.

51.     On July 18, 2016, Cloobeck contacted Apollo's co-founder Marc Rowan to initiate discussions concerning his potential employment by Apollo. Cloobeck had not yet tendered his shares.

52.     On or around August 3, 2016, Apollo offered Kraff the opportunity to co-invest between $50 million and $100 million with Apollo in the Diamond Resorts transaction.

53.     On August 9, 2016, Cloobeck informed David Sambur ("Sambur"), an Apollo partner and the head of the Apollo team working on the Diamond deal, that only 27.9% of the shares had been tendered. The Tender Offer had been scheduled to expire the next day, on August 10, 2016. On or around the time Cloobeck was withholding his support for the deal, Apollo offered Cloobeck a consulting agreement to be an advisor to Apollo. This consulting agreement between Apollo and Cloobeck, representing additional consideration not offered to any public stockholder in the Company,  was not disclosed to Diamond's public shareholders who continued to be solicited to tender their shares into the deal.

54.     In addition, Apollo offered consulting agreements or co-investment opportunities to Diamond's Vice Chairman Lowell Kraff and CEO Palmer to support the sale of Diamond to Apollo, which a reasonable Diamond stockholder would conclude were also financial incentives to support the Tender Offer. These incentives were not offered or disclosed to Diamond's public shareholders who continued to be solicited to tender their shares into the deal.

55.     On August 9, 2016, Diamond disclosed in an Amended Schedule 14D-9 that, as of 5:00 P.M. EST, on August 9, 2016, only 19,499,074 shares (or approximately 27.96% of the then-outstanding shares) had been tendered pursuant to the Offer. Diamond stated in the Amended Schedule 14D-9 that Diamond and Apollo had agreed to extend the Tender Offer for a period of ten business days, to 5:00 P.M. EST on August 24, 2016.

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

56.   When Mr. Cloobeck tendered his shares on August 17, 2016, his tender tipped the cumulative sum of total shares tendered to 51.0308%, which was over the 50% threshold required under the Merger Agreement.

57.   On August 23, 2016, Diamond disclosed in an additional Amended Schedule 14D-9 that, as of 5:00 P.M. EST, on August 23, 2016, 41,066,105 shares (or approximately 58.88% of the then-outstanding shares) were tendered pursuant to the Offer. The Tender Offer had been scheduled to expire at midnight Eastern Standard Time on August 24, 2016. Diamond stated in the Amended Schedule 14D-9 that Diamond and Apollo had agreed to extend the Tender Offer for a period of four business days, to 5:00 P.M. EST on August 30, 2016.

58.   On August 29, 2016, Diamond disclosed in an additional Amended Schedule 14D-9 that, as of 5:00 P.M. EST, on August 29, 2016, 43,586,915 shares (or approximately 62.49% of the then-outstanding shares) were tendered pursuant to the Offer. The Tender Offer had been scheduled to expire at midnight EST on August 30, 2016. Diamond stated in the Amended Schedule 14D-9 that Diamond and Apollo had agreed to extend the Tender Offer for a period of two business days, to 5:00 P.M. EST on September 1, 2016. Defendants did not explain why the deadline was further extended given that more that 50% of outstanding shares had been tendered by this date.

59.   On August 31, 2016, Apollo partner Sambur confirmed internally that Apollo was hiring Cloobeck as a consultant.

60.   On September 2, 2016, Mr. Cloobeck announced in a firm-wide email that Apollo had offered him "a special position as an advisor." This information had not been disclosed to Diamond shareholders during the pendency of the tender offer.

61.   On September 2, 2016, Diamond disclosed in an additional Amended Schedule 14D-9 that at 5:00 P.M. EST on September 1, 2016, the tender offer expired and was not extended.

Diamond stated that, as of the expiration time of the tender offer, a total of 56,675,355 shares (or approximately 81.26% of the then-outstanding shares) were validly tendered into and not withdrawn from the tender offer.

62.     On September 2, 2016, having exceeded the 50% level of ownership necessary to consummate the transaction's back-end merger without a stockholder vote, Apollo consummated the merger.

63.     Stockholders were entitled to the information necessary to make an informed decision concerning the adequacy of the consideration they were being offered by means of the Tender Offer, including the opinion of the Board's Chairman and largest shareholder that it was the wrong time to sell because Diamond was being mismanaged, and Diamond's offer of additional consideration in the form of consulting agreements or co-investment opportunities for Cloobeck, Kraff, and Palmer.

64.     Defendants caused materially incomplete and misleading Amendments to the Schedule 14D-9 dated August 9, 2016, August 24, 2016, August 29, 2016, and September 2, 2016 to be filed with the SEC, omitting that (1) Cloobeck, the Board' Chairman, had abstained from voting on the sale of Diamond—the business that he had founded and led—for reasons that directly contradicted the Board's recommendation to the stockholder; (2) that Apollo had offered Cloobeck additional consideration for the deal in the form of a consulting agreement by Apollo; and (3) that Apollo had offered financial incentives in the form of consulting agreements or co-investment opportunities to Diamond's Vice Chairman Lowell Kraff and CEO Palmer. Diamond's representation to shareholders that they would receive a fair price in the merger was materially misleading without an additional simultaneous, tempering disclosure that Cloobeck believed it was a bad time to sell the Company because mismanagement had negatively affected the sales price,

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

and disclosures of the additional consideration being provided to insiders by means of the consulting and co-investment agreements with Cloobeck, Kraff, and Palmer.

65.     Because the consummation of the Tender Offer was subject to the condition that, upon expiry of the Tender Offer, more than 50% of the then-outstanding shares were validly tendered and not properly withdrawn, the omission of the subsequent financial incentives to insiders after the filing of the Recommendation Statement, in addition to the omission of Cloobeck's reasons for his initial abstention, caused all tendering class members to be harmed, regardless of when they tendered. In light of the right to withdraw a tender already made, Diamond shareholders who validly tendered their shares both before and after the consulting and co-investment arrangements were made with Cloobeck, Kraff, and Palmer were deprived during the pendency of the Tender Offer of the material information necessary for them to make an informed decision regarding the tendering of their shares, and were thus harmed.

## LOSS CAUSATION

66.     Defendants' material omissions in the Recommendation Statement have substantially contributed to the economic loss that Plaintiff and the members of the class have incurred in being asked to tender their Diamond shares.

67.     The Recommendation Statement recommended to Plaintiff and the Class that they tender their shares pursuant to the Tender Offer. As detailed above, the Recommendation Statement failed to provide Diamond shareholders with material information necessary for them to make an informed decision regarding whether or not to tender their shares.

68.     Defendants caused a materially incomplete and misleading Recommendation Statement to be filed with the SEC, omitting that the Board's Chairman had abstained from voting on the sale of Diamond—the business that he had founded and led—for reasons that directly contradicted the Board's recommendation to the stockholder. Defendants further caused materially

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

incomplete and misleading Amendments to the Schedule 14D-9 dated August 9, 2016, August 24, 2016, August 29, 2016, and September 2, 2016 to be filed with the SEC, omitting that (1) Cloobeck, the Board' Chairman, had abstained from voting on the sale of Diamond—the business that he had founded and led—for reasons that directly contradicted the Board's recommendation to the stockholder; (2) that Apollo had offered Cloobeck additional consideration for the deal in the form of a consulting agreement by Apollo; and (3) that Apollo had offered financial incentives in the form of consulting agreements or co-investment opportunities to Diamond's Vice Chairman Lowell Kraff and CEO Palmer.

69.     Defendants' material omissions in the Recommendation Statement and in the Amendments to the Schedule 14D-9 dated August 9, 2016, August 24, 2016, August 29, 2016, and September 2, 2016 caused Plaintiff and the members of the Class to tender their stock, and to not withdraw those tenders, without sufficient material information. That information directly related to the value of the consideration they received in the Tender Offer. A respected insider had knowledge of reasons why the Tender Offer provided inadequate consideration for the fair value of the Company, and Apollo was compelled to offer additional consideration to that insider and others in order to secure their support. Accordingly, the members of the Class were misled into exchanging their shares of Diamond common stock for insufficient value, substantially contributing to the economic loss that Plaintiff and the members of the class thereby incurred.

## APPLICABILITY OF THE *AFFILIATED UTE* PRESUMPTION OF RELIANCE

70.     Plaintiff and the putative Class are entitled to the *Affiliated Ute* presumption of reliance due to Defendants' failure to disclose nonpublic material information relating to a tender offer for Diamond in violation of federal securities laws. Defendants had a duty to disclose that information, but made no such disclosure.

**FIRST CAUSE OF ACTION**

**Claim for Violations of Section 14(e) of the Exchange Act Against All Defendants**

71.     Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

72.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading..." 15 U.S.C. §78n(e).

73.     As discussed above, Defendants negligently caused or allowed the Recommendation Statement to be disseminated to Diamond stockholders in order to solicit them to tender their shares in the Tender Offer, and the Recommendation Statement contained untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

74.     During the relevant time period, Defendants disseminated the false and misleading Recommendation Statement above. Defendants negligently disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

75.     The Recommendation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

76.     In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles

Law Offices
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

77.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

78.    Defendants negligently omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with the Tender Offer and Merger, they negligently omitted the material information from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

79.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class.

## SECOND CAUSE OF ACTION

**Claim for Violations of Section 20(a) of the Exchange Act Against All Defendants**

80.    Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

81.    The Individual Defendants acted as controlling persons of Diamond within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Diamond, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation

Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

82. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

83. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

84. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

85. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

86. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positi*ons as controlling

Law Offices
ALBRIGHT, STODDARD, WARNICK & ALBRIGHT
A PROFESSIONAL CORPORATION
QUAIL PARK, SUITE D-4
801 S. RANCHO DRIVE
LAS VEGAS, NEVADA 89106

persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Defendants' wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

DATED this 23rd day of July, 2018.

ALBRIGHT, STODDARD, WARNICK
& ALBRIGHT

By _____
G. Mark Albright, Esq., NBN 01394
Jorge L. Alvarez, Esq., NBN 014466
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
Email:  gma@albrightstoddard.com
jalvarez@albrightstoddard.com

LABATON SUCHAROW LLP
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Emails: ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Plaintiff Local 705*
*International Brotherhood of Teamsters*